# RICHARD S. KIRBY *v.* STATE OF MARYLAND

[No. 762, September Term, 1980.]

*Decided March 9, 1981.*

The cause was argued before MORTON, WILNER and WEANT, JJ.

*Peter M. Levin, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender of Maryland,* on the brief, for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Dana Levitz, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court. WILNER, J., filed a concurring opinion at page 211 *infra.*

On 12 March 1980, a jury in the Circuit Court for Baltimore County found the appellant Richard S. Kirby guilty of assault and assault with intent to rape. As a consequence the appellant was committed to the custody of the Department of Correction for a fifteen year period. Having noted a timely appeal, Mr. Kirby presents the following questions:

I. Did the trial judge abuse [its] discretion by admitting, for impeachment purposes, evidence of a twenty-five year old sodomy conviction obtained when Appellant was seventeen years old?

II. Did the trial court err in denying defense counsel the opportunity to ask the complaining witness on cross-examination if she was under the care of a psychiatrist?

III. Was Appellant's arrest illegal due to lack of probable cause that he had committed a felony, therefore requiring that any evidence obtained as a result of the arrest should have been excluded?

IV. Was the evidence adduced at trial legally insufficient to establish Appellant's criminal agency?

Because we find that all of these queries warrant negative responses, we shall affirm the challenged conviction.

## I.

In 1956, when he was seventeen years old, the appellant was convicted of sodomy. Despite Mr. Kirby's objection, the trial court allowed the prosecution to use this conviction to impeach his credibility. It was and is Mr. Kirby's contention that

[t]he extreme remoteness of the sodomy conviction, the fact that [he] was a juvenile under today's standards when he was convicted and the prejudicial similarity to the offense with which [he] was on trial all required that the trial court, in [its] discretion, rule the conviction inadmissible for impeachment purposes.

In our recent opinion of *Burrell v. State,* 42 Md. App. 130, 399 A.2d 1354 (1979), this Court reviewed the status of Maryland law with regard to impeachment of witnesses by a showing of a prior conviction. There, quoting *Cousins v. State,* 230 Md. 2, 4-5, 185 A.2d 488, 489 (1962), we said at pages 138-39, 399 A.2d at 1359:

"It has been held by this Court that evidence of the accused's previous conviction of crime need not be restricted to infamous crimes or those involving moral turpitude, provided the violation of law may have some tendency to show that the person charged is not to be believed under oath. . . . In such instances the exercise of discretion by the trial judge will not be interfered with on appeal unless the fact of the prior conviction is clearly irrelevant. . . . Where the conviction was for a crime not infamous, the length of time since it occurred considered with the nature of the crime has been deemed pertinent in citing relevancy. . . . We think that where the prior conviction was for an infamous crime, evidence of it is admissible without reference to the time of its commission, for such bearing and weight on credibility as the trier of fact may give it under the circumstances." [Citations omitted].

The foregoing pronouncement prompts the following observations.

First, while we have been cited no case or cases wherein it has been stated definitively that sodomy is an infamous crime, we are convinced that it is such. In W. Clark and W. Marshall, A Treatise on the Law of Crimes (4th ed. 1940),

the authors state at section 464 that "[s]odomy or buggery is spoken of by the courts and in statutes as 'the unnatural crime,' or 'the crime against nature.' It is so disgusting a crime against morality and decency that it is punished by the common law, not as a misdemeanor merely, but as a felony." Maryland in turn has held an infamous crime to be

> such crime as involve[s] moral turpitude, or such as render[s] the offender incompetent as a witness in court, upon the theory that a person would not commit so heinous a crime unless he [is] so depraved as to be unworthy of credit. I Abbott's Law Dic. 602, and authorities there cited. The General Court of State in *Evans v. Bonner*, 2 H. & McH. 378, defined "infamous crime" to be one which rises at least to "the grade of felony."

*State v. Bixler*, 62 Md. 354, 360 (1884). See also Black's Law Dictionary 335 (5th ed. 1979), wherein infamous crime is defined as follows:

> A crime which entails infamy upon one who has committed it. The term "infamous" — *i.e.*, without fame or good report — was applied at common law to certain crimes, upon the conviction of which a person became incompetent to testify as a witness, upon the theory that a person would not commit so heinous a crime unless he was so depraved as to be unworthy of credit. These crimes are treason, felony, and the *crimen falsi*. A crime punishable by imprisonment in the state prison or penitentiary, with or without hard labor, is an infamous crime, within the provision of the fifth amendment of the constitution that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury." Mackin v. U.S., 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909; Brede v. Powers, 263 U.S. 4, 44 S.Ct. 8, 68 L.Ed. 132. It is not the character of the crime but the nature of the punishment which renders the crime "infamous." Whether an offense is infamous de-

pends on the punishment which may be imposed therefor, not on the punishment which was imposed. United States v. Moreland, 258 U.S. 433, 42 S.Ct. 368, 370, 66 L.Ed. 700,

and Maryland Annotated Code article 27, section 553, which holds that "[e]very person convicted of the crime of sodomy shall be sentenced to the penitentiary for not more than ten years." Therefore, in accordance with present day Maryland law, evidence of Mr. Kirby's sodomy conviction was " 'admissible without reference to the time of its commission . . .' " *Burrell, supra,* 42 Md. App. at 139, 399 A.2d at 1359 (quoting *Cousins, supra,* 230 Md. at 5, 185 A.2d at 489).

Second, despite our reliance on *Burrell's* proposition that " 'where the prior conviction was for an infamous crime, evidence is admissible without reference to the time of its commission,' " we are uncomfortable with the thought that had the sodomy conviction in the instant case (or any infamous crime conviction for that matter) been a single, isolated incident, the prosecution could have used such to impeach Mr. Kirby, *even after such a lengthy passage of time as twenty-five years.* Nevertheless, such is the law.

Finally, we note that a contrary conclusion is not warranted even though Mr. Kirby was only seventeen years old when he was convicted of sodomy, since at that time the law regarded him an adult.

## II.

During cross-examination of the complaining witness at the proceedings below, the appellant desired to elicit from her the fact that she had been seeing a psychiatrist for a period of at least six years prior to trial. By doing so, the appellant sought to impeach the credibility of the victim. The trial court refused to allow Mr. Kirby to so impeach the prosecutrix, although it did say that he could ask her if she had "ever hallucinated, questions of that nature," *e.g.,* "does she forget, does she have a bad memory, does she have bad vision . . . [d]oes she have problems hearing, is she color blind et cetera." He declined to so question the witness.

Since, "the scope of cross-examination is within the discretion of the trial judge, and grounds for reversal will occur only when there is an abuse of discretion," *Connor v. State,* 34 Md. App. 124, 133, 366 A.2d 385, 391 (1976) (citations omitted), we are unable to say that the trial court erred in its restriction of cross-examination to only those questions which would in fact have tested the witness' credibility, especially in the light of the appellant's failure to pursue unrestricted, relevant matters.

### III. and IV.

A reading of the record convinces us that the insufficiencies complained of are nonexistent.

As to the allegedly illegal arrest, the record shows that on 31 August 1979, while patrolling by vehicle the 700 block of Frederick Road in Catonsville, Corporal Larry Kessler of the Baltimore County Police Department was flagged down by a woman, the prosecutrix herein, and advised by her that she had been sexually assaulted several weeks previously and that the gentleman walking westbound on the opposite side of the road was responsible for said assault. After stopping the gentleman in question, and after the prosecutrix again identified him as her assailant, Officer Kessler had the man now known to be the appellant arrested. In the light of the foregoing, we cannot say that Mr. Kirby's warrantless arrest was illegal.

Maryland Annotated Code article 27, section 594B (c) states that "[a] police officer may arrest a person without a warrant if he has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in his presence or view." Therefore if Officer Kessler had probable cause to believe that the prosecutrix had been sexually assaulted by the appellant, then his arrest of Mr. Kirby was justified. We in turn find that the requisite probable cause was supplied by the victim. *See Evans v. State,* 11 Md. App. 451, 274 A.2d 653, *cert. denied,* 262 Md. 746 (1971). Because the warrantless arrest of Mr. Kirby was legal, any

evidence obtained as a result need not have been excluded at trial.

As to the lack of proof of the appellant's criminal agency, we believe that the victim's positive identification of Mr. Kirby as her attacker, "if believed by the trier of facts, [which was so in this case,] is ample evidence to sustain a conviction." *Montague v. State,* 3 Md. App. 66, 71, 237 A.2d 816, 820, *cert. denied,* 250 Md. 732 (1968) (citations omitted).

Accordingly, we find that the appellant's arrest and subsequent conviction were proper, and that the judgment of the Circuit Court for Baltimore County must therefore be affirmed.

> *Judgments affirmed.*
> *Costs to be paid by the appellant.*

*Wilner, J., concurring:*

I concur entirely with the Opinion authored by Judge Weant and indeed join it. I file this separate concurring Opinion to emphasize that which I could only suggest in the Appendix to *Burrell v. State,* 42 Md. App. 130, 147, *et seq.* (1979); namely, that in using an infamous — non-infamous criterion to determine the admissibility of prior convictions to impeach the credibility of a testifying defendant, Maryland is completely out of step with modern day thinking and with most of the rest of the country.

As Judge Weant noted, we are indeed uncomfortable with the notion that a 25-year old sodomy conviction, standing alone, would be admissible for the presumed purpose of impeaching a defendant's credibility. Yet, by statute (Courts article, § 10-905) and judicial determination (*see Cousins v. State,* 230 Md. 2 (1962)), that is permissible in this State. It ought not to be.

The law engages in many fictions; some are harmless, some are helpful or even necessary. This one is neither. It simply defies reason to theorize that a person may not be a truthful witness because 25 years ago he was convicted of

sodomy, especially when we have no idea of the facts upon which the conviction was based. Such a conclusion — even if one accepts the underlying premise that there is some relationship between the disposition to commit such a crime and the disposition to be untruthful — flies in the face of the one basic principle accepted by nearly every discipline in our society, that people can change.

Certain types of past criminal behavior, if exhibited in the relatively recent past, can very well and legitimately influence a jury's perception of one's present credibility. But there has to be some balance, and the balance should not be struck on the basis of whether the crime was infamous or not infamous. It seems to me that, aside perhaps from actual perjury, no crime should be presumed capable of casting permanent doubt on a person's credibility. Unless a prior conviction can be shown to be part of a general and persistent pattern of criminal conduct, where the pattern itself may be indicative of untruthfulness, I think that some form of statute of limitation ought to be imposed on the use of prior convictions for impeachment purposes.

I hope that the Court of Appeals or the General Assembly will take another look at this issue in light of plain reality and what Congress and other States have done.