506 A.2d 656

**Dana Romero TINNEN**

v.

**STATE of Maryland.**

**Nos. 842, 843 and 844, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 3, 1986.

Certiorari Denied June 26, 1986.

94

Melissa M. Moore, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty., for Prince George's County and Joan S. Lieberman, Asst. State's Atty., for Prince George's County, on brief, Upper Marlboro), for appellee.

Argued before MOYLAN, WEANT and ADKINS, JJ.

ADKINS, Judge.

We have before us three consolidated appeals. Their common nexus is a jury trial in the Circuit Court for Prince George's County at which appellant, Dana Romero Tinnen, was convicted of and sentenced for theft of an automobile, resisting arrest, and assault. Those judgments are the subject of his appeal in No. 842. The convictions in that case were the basis for revocation of Tinnen's probation in two other cases. The propriety of that action is the subject of the appeals in Nos. 843 and 844. Our affirmance of the judgments in No. 842 produces a similar result in Nos. 843 and 844.

*No. 842*

In this case Tinnen complains that

1. The trial court erroneously admitted certain "other crimes" evidence that was irrelevant to the charges against him; and

2. A mistrial should have been granted when evidence previously suppressed was admitted at trial.

We place these contentions in their factual context.

As to the first issue, the evidence presented to the jury was sufficient to establish, beyond a reasonable doubt, that in the District of Columbia, Tinnen stole a car from Sumner Maletz. That crime, of course, could not be the subject of prosecution in Maryland. But the evidence also showed that on the evening of the same day, Tinnen was observed, in Maryland, in possession of the stolen vehicle. That tended to show commission of one type of theft proscribed by Art. 27, § 342(c)(1):

A person commits the offense of theft if he possesses stolen property knowing that it has been stolen, or believing that it has probably been stolen, and;

(i) Has the purpose of depriving the owner of the property; or

(ii) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(iii) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Tinnen was spotted in the car in an apartment complex parking lot in Prince George's County. His actions there prompted one of the occupants, Charlene Nylin, to call the police. When the uniformed officers arrived and spoke with Tinnen, an altercation occurred which caused Tinnen's arrest for assault. A further altercation produced the charge of resisting arrest.

The specific "other crimes" evidence of which Tinnen complains was contained in the testimony of Sumner Maletz. Maletz recounted that he had parked his car on a street in Washington and was in the process of leaving it

when a man, later identified as Tinnen, accosted him, claimed ownership of the car, forced Maletz to move to the right passenger seat, and entered the vehicle. The man then ordered Maletz to place the keys in the ignition, displayed a knife, and took Maletz's wallet and money from his jacket. He also threatened to kill Maletz. The man then took Maletz on a high-speed drive through parts of the District, during the course of which he again threatened Maletz's life and in fact stabbed him in the thigh with the knife. Eventually, Maletz was ejected from the car and the man drove off in it.

In the trial court Tinnen objected to portions of this testimony. He pointed out that Tinnen was not charged with stealing Maletz's wallet or money. Nor was Tinnen charged with assaulting and beating Maletz, or with any other offense relating to Maletz, except theft of the car. The trial judge overruled the objections.

We recognize that

> [T]here are few principles of American criminal jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, is inadmissible.

*Cross v. State,* 282 Md. 468, 473, 386 A.2d 757 (1978). There are, however, numerous exceptions to this rule. The evidence may come in if its purpose is to establish motive, intent, absence of mistake, identity, or common plan or scheme. Moreover, "other crimes" evidence may be admitted when several crimes are so connected in time or circumstances that one cannot be fully shown without proving the other. *See State v. Werner,* 302 Md. 550, 557, 489 A.2d 1119 (1985) and *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976).

To bring Tinnen within the scope of Art. 27, § 342(c)(1), the State had to prove, of course, that Tinnen was in possession of Maletz's car in Prince George's County. Maletz's testimony, as summarized above, did not re-

late to that aspect of the offense. But the State also had to prove that the car was stolen, that Tinnen knew or believed it probably had been stolen, and that Tinnen had the purpose of depriving Maletz of the property. Proof that Tinnen himself stole the car from Maletz was perfectly proper for those purposes. Additionally, proof of Tinnen's threats and violence was permissible. It supplied evidence that Tinnen intended to steal the car—to deprive Maletz of possession of it—and that the taking was not permissive. That the car was stolen and that Tinnen knew or should have known this when he possessed it in Prince George's County might have been proved in various ways, but the State was surely not limited to that mode of proof (*e.g.* possession of recently-stolen property) most acceptable to the defense.

Furthermore, the events that Maletz recounted were part of a single criminal episode—a continuing transaction during which all of Tinnen's criminal actions were closely intertwined. *See, e.g., Tull v. State,* 230 Md. 596, 188 A.2d 150 (1963) and *Wilson v. State,* 181 Md. 1, 26 A.2d 770 (1942). Maryland courts have frequently applied what is sometimes called the "res gestae" exception to let in evidence of crimes very closely connected to the one at trial. *See* Comment, *Evidence of Other Crimes as Substantive Proof of Guilt in Maryland,* 9 U.Balt.L.Rev. 245 (1980). In *Blake v. State,* 210 Md. 459, 124 A.2d 273 (1956), evidence of sodomy was admitted even though it was not within the scope of perverted practice (Art. 27, § 627) (1957) for which the defendant was on trial. *See also Mazer v. State,* 231 Md. 40, 188 A.2d 552 (1963) (in prosecution for pandering evidence that defendant paid commission to his employee for then-illegal "sitting" admissible).

In *State v. Jones,* 284 Md. 232, 395 A.2d 1182 (1979) the Court of Appeals did hold that proof of similar robberies within two-and-a-half hours of each other, committed in the same area by the same parties was not admissible. It noted "that mere proximity in time and location within which several offenses may be committed does not necessarily

make one offense intertwine with the other." 284 Md. at 243, 395 A.2d 1182. But the court further observed that the presence of a continuing transaction would be sufficient to produce a different result. 284 Md. at 244, 395 A.2d 1182. Such a continuing transaction was found to exist in *Tichnell v. State,* where the court said the offenses consolidated for trial were "so intertwined that one could not be proved without producing evidence of the other." *Tichnell v. State,* 287 Md. 695, 711, 415 A.2d 830 (1980).

■ We believe the case before us is closer to *Tichnell* than to *Jones.* Substantial portions of Maletz's testimony were properly admissible to prove the crime with which Tinnen was charged. Other portions, even if not admissible on that basis, showed other crimes committed during a single criminal episode and inextricably intertwined with evidence pertinent to the offense against which Tinnen was defending. A trial judge has a degree of discretion in admitting evidence; she must determine whether its probative value outweighs the prejudicial effect. Although the case is a close one, there was a basis for the admission of the Maletz testimony, and we cannot say that the judge abused her discretion in admitting it at least as to the charge of theft.

■ At first blush, the admissibility of this evidence on the resisting arrest and assault charges presents a more difficult problem. The State's contention that evidence of the "other crimes" was admissible to show Tinnen's motive for assaulting the officer and resisting arrest is unpersuasive. The intent, absence of mistake, identity, and common plan exceptions to the "other crimes" rule are not applicable. Nor were the assault and resisting arrest offenses so intertwined with the District of Columbia incident that the former could not be fully shown without proving the latter.

■ Nevertheless, the theft charge and the other charges were all joined for trial. Maletz's testimony was, as we have seen, admissible as to the first. Tinnen sought no instruction limiting that evidence to that charge. As a

consequence, he cannot now complain that the evidence might also have been considered by the jury with respect to the other two charges. *See Fowlkes v. State,* 53 Md.App. 39, 46, 451 A.2d 1270 (1983), *cert. denied,* 295 Md. 301 (1983) (absence of request for appropriate instruction constitutes waiver).

The second issue raised in Case No. 842 has to do with evidence about the keys to Maletz's car. When the police were questioning Tinnen on the apartment complex parking lot, and before they arrested him, they searched his pockets and found those keys. Tinnen moved *in limine* that any evidence about the keys be suppressed. The court granted the motion, prohibiting any reference to the keys during the trial. When Charlene Nylin was on the stand, she gave a lengthy response to the State's question "What, if anything, happened after [Tinnen] left your door?" Included in her answer was a statement that she had called the police. She went on to say that after they had arrived, she heard one of the officers ask Tinnen "Well, do you have any keys, let's see if you have any keys." Defense counsel promptly moved for a mistrial.

■ The declaration of a mistrial is discretionary with the trial court, but that action should be taken only when "there is manifest necessity" for it. *Cornish v. State,* 272 Md. 312, 317, 322 A.2d 880 (1974). Here, the reference to the keys was slight and fleeting. There is no suggestion of any intention to flout the court's suppression order. Moreover, although Nylin's answer mentioned the keys, she did not say that they had been found in Tinnen's possession. The testimony had no probative value. Nor did Tinnen's lawyer move to strike the answer, or request a corrective instruction. Under the circumstances, we do not believe the judge abused her discretion when she denied the mistrial motion. *See Johnson v. State,* 232 Md. 199, 192 A.2d 506 (1963).

*Nos. 843 and 844*

Based solely on the convictions in No. 842, the trial court revoked Tinnen's probation in two other cases. Citing

*Dean v. State,* 291 Md. 198, 434 A.2d 552 (1981), Tinnen argues that if we reverse his convictions in No. 842, we must also reverse the revocations of probation. In *Dean* the Court of Appeals held that when revocation of probation is based at least partly on the fact of a conviction (as opposed to being based on independent proof of criminal acts underlying the conviction) the revocation must be reversed if the conviction was reversed. 291 Md. at 203–04, 434 A.2d 552.

Tinnen's logic is impeccable, but the predicate for his conclusion is lacking. Since we affirm the judgments in No. 842, we do likewise as to the revocations of probation.

JUDGMENTS AFFIRMED. APPELLANT TO PAY THE COSTS.